1
2
3                                                                    O
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   TANYA TAGLE,                    )   Case No. CV-11-7093-SP
12              Plaintiff,           )
13        v.                         )   MEMORANDUM OPINION AND
                                     )   ORDER
14                                   )
     MICHAEL J. ASTRUE,              )
15   Commissioner of Social Security )
     Administration,                 )
16                                   )
                Defendant.           )
17 _____ )

18                              **I.**

19                         **INTRODUCTION**

20        On October 14, 2011, plaintiff Tanya Tagle filed a first amended complaint

21   against defendant Michael J. Astrue, seeking a review of a denial of supplemental

22   security income ("SSI").   Both plaintiff and defendant have consented to proceed

23   for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C.

24   § 636(c).  The court deems the matter suitable for adjudication without oral

25   argument.

26        Plaintiff presents one disputed issue for decision:  whether the

27   administrative law judge ("ALJ") properly considered plaintiff's credibility.

28

                                    1

Memorandum of Points and Authorities in Support of Plaintiff's Complaint ("Pl. Mem.") at 4-12; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-3.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly discounted plaintiff's credibility. Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 39 years old on the date of her December 10, 2009 administrative hearing, is a high school graduate with a certificate for medical assisting. AR at 53, 76. Her past relevant work includes employment as a retail sales clerk and pharmacy clerk. *Id.* at 98.

On January 16, 2007, petitioner, unrepresented, filed an application for disability insurance benefits and SSI, alleging an onset date of January 1, 2007.[1] *Id.* at 108. ALJ Philip J. Simon denied the claim at the first step. *Id*. at 111.

On September 17, 2008, petitioner filed a second application for SSI, alleging an onset date of June 22, 2007, due to scoliosis, depression, anxiety, degenerative disc disease, arthritis, and fibromyalgia. *Id.* at 126, 157-63, 200, 205. The Commissioner denied plaintiff's application initially, after which she filed a request for a hearing. *Id.* at 126-31.

---

[1]   The Administrative Record does not contain the paperwork for the January 16, 2007 application, but based on the decision, it appears that plaintiff alleged disability due to lower back pain, obesity, kidney stones, and ankle sprain. AR at 112.

2

1    On December 10, 2009, petitioner, represented by counsel, appeared and

2 testified at a hearing before ALJ Michael J. Kopicki. *Id.* at 71-104. Howard

3 Goldfarb, a vocational expert, also provided testimony. *Id.* at 98-103. The ALJ

4 denied benefits on December 21, 2009.[2] *Id.* at 25-35.

5    Applying the well-known five-step sequential evaluation process, the ALJ

6 found, at step one, that plaintiff had not engaged in substantial gainful activity

7 since June 22, 2007, the alleged onset date. *Id.* at 28.

8    At step two, the ALJ found that plaintiff suffered from the following severe

9 impairments:  fibromyalgia; degenerative disc disease of the lumbar spine; and

10 obesity. *Id.*

11    At step three, the ALJ found that plaintiff's impairments did not meet or

12 medically equal one of the listed impairments set forth in the Listings. *Id.* at 29.

13    The ALJ then assessed plaintiff's residual functional capacity ("RFC")[3] and

14 determined that she had the RFC to perform sedentary work with the following

15 limitations, plaintiff:  could stand/walk for two hours in an eight-hour day; could

16 sit for six hours in an eight-hour day; was precluded from climbing ladders, ropes,

17

18    [2]    A prior finding of non-disability creates a presumption of continuing non-

19 disability, but the presumption will not apply if there are changed circumstances.
*Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1996) (as amended)*; Chavez v.*

20 *Bowen*, 844 F.2d 691, 693-94 (9th Cir. 1988).  Although the Social Security

21 Administration determined that *Chavez* applied (AR at 123-35), the ALJ

22 concluded that there were changed circumstances. *Id.* at 26.  Further, *Chavez* is
inapplicable when the claimant is unrepresented in the prior claim. *Lester*, 81 F.3d

23 at 827-28.

24    [3]    Residual functional capacity is what a claimant can do despite existing

25 exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step

26 evaluation, the ALJ must proceed to an intermediate step in which the ALJ

27 assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486

28 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1 or scaffolds; could occasionally balance, stoop, crouch, and crawl; and must avoid
2 concentrated exposure to temperature extremes and hazards such as dangerous
3 machinery and unprotected heights.  *Id.* at 30.

4     The ALJ found, at step four, that plaintiff was unable to perform her past
5 relevant work.  *Id.* at 33.

6     At step five, the ALJ found that there were jobs that existed in significant
7 numbers in the national economy that plaintiff could perform, including lens
8 inserter, optical assembler, and jewelry preparer.  *Id.* at 33-34.  Consequently, the
9 ALJ concluded that plaintiff did not suffer from a disability as defined by the
10 Social Security Act.  *Id*. at 34.

11     Plaintiff filed a timely request for review of the ALJ's decision, which was
12 denied by the Appeals Council.  *Id.* at 7-9, 17.  After considering additional
13 information submitted by plaintiff, the Appeals Council again denied plaintiff's
14 request.  *Id.* at 1-3.  The ALJ's decision stands as the final decision of the
15 Commissioner.

16                                     **III.**

17                          **STANDARD OF REVIEW**

18     This court is empowered to review decisions by the Commissioner to deny
19 benefits.  42 U.S.C. § 405(g).  The findings and decision of the Commissioner
20 must be upheld if they are free of legal error and supported by substantial
21 evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as
22 amended).  But if the court determines that the ALJ's findings are based on legal
23 error or are not supported by substantial evidence in the record, the court may
24 reject the findings and set aside the decision to deny benefits.  *Aukland v.*
25 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
26 1144, 1147 (9th Cir. 2001).

27

28

1    "Substantial evidence is more than a mere scintilla, but less than a
2    preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
3    "relevant evidence which a reasonable person might accept as adequate to support
4    a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
5    F.3d at 459.  To determine whether substantial evidence supports the ALJ's
6    finding, the reviewing court must review the administrative record as a whole,
7    "weighing both the evidence that supports and the evidence that detracts from the
8    ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
9    affirmed simply by isolating a specific quantum of supporting evidence.'"
10   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
11   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing
12   the ALJ's decision, the reviewing court "'may not substitute its judgment for that
13   of the ALJ.'"  *Id.*  (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
14   1992)).

15                                          **IV.**

16                                    **DISCUSSION**

17          Plaintiff contends that the ALJ failed to properly consider plaintiff's
18   credibility.  Pl. Mem. at 4-12.  Specifically, plaintiff argues that neither of the two
19   reasons the ALJ provided for discounting plaintiff's credibility – the testimony
20   was not supported by objective medicine and was inconsistent with plaintiff's
21   daily activities – were clear and convincing.  *Id.*  In fact, the ALJ did not cite
22   inconsistency with plaintiff's daily activities as a reason for discounting plaintiff's
23   credibility.  In support of her argument, plaintiff cites to page 48 of the record, but
24   page 48 is the cover page for the March 10, 2008 hearing for plaintiff's prior
25   claim.  Pl. Mem. at 9.  But although much of plaintiff's argument is based on this
26   factual misstatement, the court agrees that the ALJ failed to provide clear and
27   convincing reasons for rejecting plaintiff's testimony.

28

                                            5

1    The ALJ must make specific credibility findings, supported by the record.

2    SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the

3    ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

4    36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced

5    objective medical evidence of an underlying impairment "'which could reasonably

6    be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

7    *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

8    is no evidence of malingering, an "ALJ can reject the claimant's testimony about

9    the severity of her symptoms only by offering specific, clear and convincing

10   reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996);

11   *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider

12   several factors in weighing a claimant's credibility, including:  (1) ordinary

13   techniques of credibility evaluation such as a claimant's reputation for lying; (2)

14   the failure to seek treatment or follow a prescribed course of treatment; and (3) a

15   claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

16   2008); *Bunnell*, 947 F.2d at 346-47.

17   At the first step, the ALJ found that plaintiff's medically determinable

18   impairments could reasonably be expected to cause the symptoms alleged.  AR at

19   31.

20   At the second step, the ALJ noted that a treating neurologist suspected that

21   plaintiff was not giving good effort and possibly "making it up" (*id.* at 31, 356),

22   but did not state that he found this to be affirmative evidence of malingering.[4]  As

---

24   [4]    The treatment records indicate that three physicians suspected plaintiff of
25   malingering:  (1) Dr. Van Duong noted that there was "very questionable pain" in
26   plaintiff's right flank (AR at 310); (2) Dr. Adelaide Willis suspected that plaintiff
     may have "secondary gain in terms of trying to apply for disability" (*id*. at 303);
27   and (3) Dr. Kaleem Uddin "got the impression that [plaintiff was] not giving good
28   effort" and one possibility for her pain was that she was "making it up just to get

1  such, the ALJ was required to provide clear and convincing reasons for

2  discounting plaintiff's credibility.  Here, the ALJ found plaintiff's statements

3  concerning the intensity, persistence, and limiting effects of her symptoms not

4  credible to the extent they were inconsistent with her RFC because:  (1) the

5  symptoms were not supported by the objective findings; and (2) the symptoms

6  were inconsistent with plaintiff's treatment history.[5]  *Id.* at 31-32.  The ALJ's

7  reasons were not clear and convincing.

8          First, the ALJ erred in relying on the lack of objective medical evidence to

9  support her claims.  An ALJ "may not reject a claimant's subjective complaints

10 based solely on a lack of objective medical evidence to fully corroborate the

11 alleged severity of pain," but it may be one factor used to evaluate credibility.

12 *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th

13 Cir. 2001).  Here, the ALJ noted that plaintiff had no remarkable findings

14 including no fracture, dislocation, and nerve root impingement, and negative

15 serology tests.  AR at 31-32.  But the ALJ also recognized that over time the focus

16 of plaintiff's "diagnosis shifted to fibromyalgia" (*id.* at 32), and fibromyalgia was

17 the alleged cause of plaintiff's pain.  Fibromyalgia is a disease that "is diagnosed

18 entirely on the basis of patient's reports of pain and other symptoms." *Benecke v.*

19 *Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).  Its causes are unknown and there are

20 no laboratory tests for the presence or severity of it.  *Rollins*, 261 F.3d at 855

21 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)); *see also Brosnahan v.*

22 *Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) (a fibromyalgia diagnosis "is

23

24 _____

25 off of work" (*id.* at 356).

26     [5]   Although the ALJ also rejected plaintiff's symptoms regarding her alleged
   mental impairments, this court will only discuss plaintiff's credibility as it pertains
27 to her physical impairments.  Plaintiff does not dispute the ALJ's finding that she
   did not have a severe mental impairment.
28

7

usually made after eliminating other conditions as there are no confirming diagnostic tests"). The only symptom distinguishing it is evidence of at least eleven out of eighteen tender points. *Rollins*, 261 F.3d at 855; *see also Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2004), *abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006). And here, two physicians found multiple tender points.[6] AR at 386, 445.

The ALJ also cited the examination findings of plaintiff's treating rheumatologist, Dr. Buhay, and consultative examiner, Dr. To, as further objective evidence that failed to support plaintiff's claims.[7] AR at 32. Both found that despite the multiple tender points, plaintiff had good range of motion. *Id*. But a good range of motion is not substantial evidence of less severe symptoms. *See, e.g., Meehan v. Astrue*, No. 11-01310, 2012 WL 3778347, at *4 (C.D. Cal. Aug. 30, 2012) (citing *Green-Young v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003) (explaining that fibrositis patients usually show full range of motion during physical examinations)). Thus, the lack of objective findings is not a clear and convincing reason for rejecting plaintiff's statements concerning the severity of her fibromyalgia.

Second, the ALJ erroneously discounted plaintiff's credibility based on her treatment history. Although "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment," plaintiff did

---

[6]   Neither Dr. Ma. Susan A. Buhay nor Dr. Sean To stated the number of tender points found. AR at 386, 445.

[7]   Dr. To opined that plaintiff's condition was mild due, in part, to her ability to get up and down the examination table with minimal difficulty. *Id.* at 445. Dr. Buhay, in contrast, opined that plaintiff's fibromyalgia was "fairly active." *Id.* at 548-49. The ALJ failed to give specific and legitimate reasons for discounting Dr. Buhay's opinion. *See Lester*, 81 F.3d at 830-31.

1    not receive conservative treatment.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th

2    Cir. 2007); *see also Tommasetti*, 533 F.3d at 1040 (conservative treatment may be

3    a clear and convincing reason for discounting a claimant's credibility).  As the

4    ALJ

5    correctly noted, plaintiff's physicians treated plaintiff's degenerative disc disease

6    and fibromyalgia with a caudal epidural steroid injection, a series of trigger point

7    injections, physical therapy, and pain relievers.  *Id.* at 31, 344-45, 353-55; *see e.g.,*

8    *id.* at 420-22, 476.  While physical therapy and pain medication are conservative,

9    epidural and trigger point injections are not.  *See Tommasetti*, 533 F.3d at 1040

10   (describing physical therapy and anti-inflammatory medication as conservative

11   treatment); *Christie v. Astrue*, No. 10-3448, 2011 WL 4368189, at *4 (C.D. Cal.

12   Sept. 16, 2011) (refusing to characterize steroid and trigger point injections as

13   conservative).  And contrary to the ALJ's conclusion, there was no substantial

14   evidence that plaintiff's symptoms were well controlled with the use of

15   medication.  *See* AR at 31.  Nor did the trigger point injections render significant

16   relief.  *Id.* at 353.

17          More important, there is no cure for fibromyalgia.  *Benecke*, 379 F.3d at

18   589-90.  Thus, the ALJ was wrong to note the lack of referral for surgery as of

19   significance.  *See* AR at 31.  Indeed, there is no evidence that any particular course

20   of treatment would have alleviated plaintiff's symptoms.  *See, e.g.*, *Trujillo v.*

21   *Astrue*, No. 11-1220, 2011 WL 5870080, at *5 (C.D. Cal. Nov. 22, 2011) (strong

22   medications and physical therapy qualified as substantial treatment of

23   fibromyalgia).

24          In short, the ALJ failed to provide clear and convincing reasons supported

25   by substantial evidence for discounting plaintiff's credibility.

26

27

28

9

1

2

**V.**

**REMAND IS APPROPRIATE**

3    The decision whether to remand for further proceedings or reverse and

4  award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

5  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by

6  further proceedings, or where the record has been fully developed, it is appropriate

7  to exercise this discretion to direct an immediate award of benefits. *See Benecke*,

8  379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000)

9  (decision whether to remand for further proceedings turns upon their likely

10  utility).  But where there are outstanding issues that must be resolved before a

11  determination can be made, and it is not clear from the record that the ALJ would

12  be required to find a plaintiff disabled if all the evidence were properly evaluated,

13  remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at

14  1179-80.

15    Here, as set out above, remand is required because the ALJ erred in failing

16  to properly evaluate plaintiff's credibility.  On remand, the ALJ shall reconsider

17  plaintiff's subjective complaints with respect to her physical impairments and

18  resulting limitations, and either credit plaintiff's testimony, provide affirmative

19  evidence that plaintiff is a malingerer, or provide clear and convincing reasons

20  supported by substantial evidence for rejecting plaintiff's subjective complaints.

21  The ALJ shall then proceed through steps four and five to determine what work, if

22  any, plaintiff is capable of performing.

23

24

25

26

27

28

# VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REMANDING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: September 21, 2012          _____
                                  SHERI PYM
                                  United States Magistrate Judge

11